UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>                Plaintiff,<br><br>v.<br><br>FAKHOURI, INC., d/b/a SOUND BITES CAFÉ, and YASSER MIRZA,<br><br>                Defendants. | Civil Action No. 1:22-cv-10694-PBS |

**MEMORANDUM IN SUPPORT OF SECRETARY OF LABOR'S MOTION FOR PROTECTIVE ORDER TO REDACT IMMIGRATION-RELATED INFORMATION ON PUBLIC DOCKET AND PROHIBIT DISCOVERY OF IMMIGRATION STATUS INFORMATION**

Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor (the "Secretary") respectfully requests, pursuant to Rule 26(c) of the Rules of Civil Procedure, that the Court issue a protective order: (1) redacting two documents Defendants previously filed in this matter—ECF Nos. 8-3 and 8-4—to remove immigration and social security number-related information of two of Defendants' former employees; and (2) barring Defendants from conducting discovery concerning the immigration status of their current or former employees, including information that tends to be a proxy for immigration status such a social security number or lack thereof.

**LEGAL STANDARD**

Rule 26(c)(1) of the Federal Rules of Civil Procedure permits a trial court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" of discovery. In exercising its discretion under Rule

1

26(c), a court should engage in an "individualized balancing of the many interests that may be present in a particular case," *United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999), and weigh the burden of any proposed discovery against its likely benefit, *see Gill v. Gulfstream Park Racing Ass'n, Inc.,* 399 F.3d 391, 400 & n.5 (1st Cir. 2005); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2040 (3d ed.). Protecting the privacy interests of litigants and third parties is "implicit in the broad purpose and language of" Rule 26(c). *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984). Thus, courts have wide latitude to restrict or prohibit discovery of sensitive personal information under Rule 26(c) even where the information sought is not otherwise privileged. *See In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004).

## ARGUMENT

Good cause exists for the Secretary's proposed protective order that would prohibit Defendants from conducting discovery into their employees' immigration status. Any discovery Defendants may seek concerning their current or former employees' immigration status would: (1) inevitably dissuade those employees from exercising their workplace rights, including the right to participate in this litigation; and (2) undermine the Secretary's ability to effectively enforce the Fair Labor Standards Act (the "FLSA"). In addition, any discovery into employees' immigration status would be of limited (if any) probative value with respect to the issues here. Because this case involves serious allegations that Defendants retaliated against their employees, and given that Defendants have already referenced immigration-related information of two former employees and their social security numbers in public filings in this matter, *see* ECF Nos. 8-3 and 8-4, a protective order barring Defendants from inquiring into the immigration status of their employees is warranted.

I. <u>Immigration-related Discovery Would Harm Defendants' Employees and the Public Interest in Effective Enforcement of the FLSA</u>

Discovery into the immigration status of litigants or witnesses has a serious *in terrorem* effect that can undermine the private and public enforcement of civil rights laws and the FLSA. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064–65 (9th Cir. 2004); *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 214 (N.D. Ill. 2007); *Flores v. Amigon*, 233 F. Supp. 2d 462, 465 n.2 (E.D.N.Y. 2002). That is to say, if employees can be forced in litigation to disclose or discuss their immigration status—or personal information that is often a proxy for immigration status, such as a social security number or lack thereof—that inevitably would deter employees from asserting their workplace rights. *See Walsh v. Tara Constr.*, No. 19-10369, 2021 WL 3856205, at *4 (D. Mass. July 8, 2021) (Boal, M.J.) (*citing EEOC v. Rest. Co.*, 448 F. Supp. 2d 1085, 1087 (D. Minn. 2006)); *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002); *Flores*, 233 F. Supp. 2d at 465 n.2; *Rengifo v. Erevos Enters. Inc.*, No. 06 Civ 4266, 2007 WL 894376, at *3 (stating that discovery into social security numbers can be a "back door attempt" to get at immigration status); *see also* Wright & Miller, *Federal Practice and Procedure* § 2040 (under Rule 26(c) "courts frequently forbid inquiry into a party's immigration status unless clearly relevant").[1]

Permitting Defendants in this case to inquire into immigration status information will not only deter employees from asserting their rights but also harm the public's interest in effective enforcement of the FLSA, *see Scalia v. Unforgettable Coatings, Inc.*, 455 F. Supp. 3d 987, 992 (D. Nev. 2020) ("there is a strong public interest in favor of enforcement of the FLSA"); *see also Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 804 (9th Cir. 1981) (in seeking restitutionary

---

[1] As the United States Court of Appeals for the Ninth Circuit has observed, a worker need not actually be undocumented to be chilled by discovery into immigration status. *See Rivera*, 364 F.3d at 1065.

injunctions under the FLSA, "the Secretary seeks to vindicate a public, and not a private, right"). To effectively enforce the FLSA, the Secretary depends upon employees feeling free to communicate with his representatives. *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). If employees know that they may be required to disclose their immigration status when participating in the Secretary's efforts to enforce the FLSA, many employees would likely choose not to participate in those enforcement efforts. *Cf. Rivera*, 364 F.3d at 1064–65; *Villareal*, 266 F.R.D. at 214; *Zeng Liu*, 207 F. Supp. 2d at 193; *Flores*, 233 F. Supp. 2d at 465 n.2. Such a result would undermine the Secretary's ability to enforce the statute.

II.     Employees' Immigration Status is Irrelevant to the Claims and Relief in this Case

Given the burdens that discovery into immigration status would impose on employees in this case and the public interest, such discovery could only be justified based on a strong showing of the relevance of immigration status to the claims or defenses here. *See Gill,* 399 F.3d at 400. In this case, Defendants cannot make such a showing because the immigration status and social security numbers of their employees have virtually no probative value as to any party's claims or defenses.

The FLSA's protections, including the anti-retaliation provision at issue here, 29 U.S.C. § 215(a)(3), apply to documented and undocumented workers alike. *See Patel v. Quality Inn South*, 846 F.2d 700, 706 (11th Cir. 1988); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987); *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1061–62 (N.D. Cal. 2002).[2] For the Secretary to prove his FLSA retaliation claim in this case, he must show that: (1) an employee engaged in statutorily protected activity; (2) the employer or another person subjected that

---

[2] *See also Jin-Ming Lin v. Chinatown Rest. Corp.*, 771 F. Supp. 2d 185, 190 (D. Mass. 2011) (O'Toole, J.); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 749–50 (D. Md. 2008).

4

employee to an adverse action; and (3) that adverse action was because of the employee's protected activity. *See Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 531 (1st Cir. 2015); *Blackie v. State of Me.*, 75 F.3d 716, 722 (1st Cir. 1996).

The Secretary's ability to prove his FLSA retaliation claim, like claims under other workplace retaliation statutes, turns on the *employer's* knowledge, mindset, motivations, and reasons for taking the adverse action; such a claim does not turn on the personal characteristics of the employees who suffered the retaliation, including the employees' immigration status. *See Tara Constr.*, 2021 WL 3856205, at *3 (barring in a retaliation case under the Occupational Safety and Health Act discovery of immigration and social security information concerning an employee where the information was unknown to the defendants at the time they retaliated); *Rest. Co.*, 448 F. Supp. 2d at 1087–88 (employee's actual immigration status in Title VII case not relevant to whether employer discharged employee due to good faith belief concerning immigration status); *cf. Barrera v. Boughton*, No. 3:07cv1436(RNC), 2010 WL 1240904 at *3–4 (D. Conn. Mar. 19, 2010) (in 42 U.S.C. § 1983 case alleging unlawful detention/arrest and racial profiling, plaintiffs' actual immigration status not relevant to dispositive issue of what certain defendants knew at the time of making the detentions/arrests).

While some courts acknowledge that immigration status can be marginally relevant to impeach a witness, "credibility issues do not, by themselves, warrant inquiries into the subject of immigration status" given the clear and serious prejudicial impacts of such discovery in retaliation cases such as this one. *Tara Constr.*, 2021 WL 3856205, at *4; *see also Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190, 191–92 (S.D.N.Y. 2006) (finding that the limited relevance of immigration status information to witness's credibility was outweighed by

5

danger of undermining enforcement of remedial employment laws); *Rengifo*, 2007 WL 894376, at *3 (same).

Thus, any discovery Defendants may seek to conduct in this FLSA retaliation case into the immigration status or social security numbers of their employees has minimal probative value that cannot justify the harms it would inevitably cause.[3]

III.     Entry of a Protective Order Regarding Immigration Status at This Stage is Justified

Rule 26(c) of the Federal Rules of Civil Procedure "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co.*, 467 U.S. at 36. Given the circumstances in this case, a protective order at this early stage of discovery is warranted. In particular, the Secretary has alleged that Defendants have subjected multiple employees to sustained harassment and threats, and has obtained a preliminary injunction on consent enjoining Defendants from retaliating against any current or former employees. *See* Compl. ¶¶ 15–57; Consent Prelim. Inj. & Order ¶ 1 (ECF No. 22).

---

[3] Immigration status can be relevant to the remedies available in some employment retaliation cases. For example, the Supreme Court concluded that reinstatement and back pay awards for a period after a retaliatory termination are remedies that are unavailable to undocumented workers under the National Labor Relations Act. *See Hoffman Plastic Compounds Inc. v. NLRB*, 535 U.S. 137, 151–52 (2002) (no authority under the National Labor Relations Act to award back pay to undocumented workers for work not performed after a termination); *Sure-Tan v NLRB*, 467 U.S. 883, 903 (1984) (National Labor Relations Board may not order reinstatement of employee lacking work authorization). Assuming the logic of those National Labor Relations Act cases applies to the FLSA, that logic and the holdings of those cases are inapplicable here because the Secretary does not seek reinstatement or back pay on behalf of any employees. Rather, the Secretary seeks only punitive damages, *see* Compl. at 9, which are available whether or not a worker is undocumented, *see Singh*, 214 F. Supp. 2d at 1061; *see also Torres v. Precision Indus.*, *Inc.*, 995 F.3d 485, 494–95 (6th Cir. 2021) (upholding compensatory and punitive damages award to unauthorized worker under state anti-retaliation law and finding that such awards "[do] not interfere with IRCA's regulation of employment and *Hoffman's* preclusion of backpay for unauthorized workers"); *Renteria v. Italia Foods, Inc.*, No. 02 C 495, 2003 WL 21995190, at *6 (N.D. Ill. Aug. 21, 2003) (compensatory damages available to undocumented workers in FLSA retaliation case).

6

Further, Defendants have already filed materials on the public docket that reference the immigration and social security number-related information of two former employees. *See* ECF Nos. 8-3 at 2–3 and 8-4 at 2. Defendants acknowledged that one of their reasons for doing so was to influence the Court's assessment of those employees' credibility. *See* Defs.' Opp'n to Temp. Restr. Order at 4–5 (ECF No. 8). Because Defendants have already shown that they will include in their litigation of this case immigration-related information pertaining to their employees, a protective order regarding immigration status is warranted at this time to prevent Defendants from seeking discovery into the immigration status of any current or former employee.

## CONCLUSION

For the reasons stated herein, the Secretary requests that the Court grant his motion for a protective order.

Respectfully submitted,

Seema Nanda
Solicitor of Labor

Maia S. Fisher
Regional Solicitor

Mark A. Pedulla
Wage and Hour Counsel

/s/ Joseph Michalakes
Joseph Michalakes
Trial Attorney
MA BBO No. 696740
Michalakes.Joseph.J@dol.gov

U.S. Department of Labor
Attorneys for Plaintiff
Post Office Address:
U.S. Department of Labor
Office of the Solicitor
JFK Federal Building, Room E-375
Boston, MA 02203
TEL: (617) 565-2500
FAX: (617) 565-2142

August 25, 2022

CERTIFICATE OF SERVICE

I hereby certify that this document, filed on August 25, 2022 through the CM/ECF system, will be sent electronically to the registered participants as identified on the NEF, and paper copies will be sent to those indicated as non-registered participants on August 25, 2022.

/s/ Joseph Michalakes
Joseph Michalakes
Trial Attorney